RECEIVED
IN LAKE CHARLES, LA.
JAN 20 2015
TONY R. MOORE, CLERK
BY_____ DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| LAURA O'HARA, ET AL., | * | CIVIL ACTION NO. 2:13-cv-967 |
| Plaintiffs, | * | |
| v. | * | JUDGE MINALDI |
| WEST CALCASIEU CAMERON HOSPITAL FOUNDATION, ET AL., | * | |
| Defendants. | * | MAGISTRATE JUDGE KAY |

## MEMORANDUM RULING

Before the court is West Calcasieu Cameron Hospital's Motion for Summary Judgment [Doc. 27] and its Supplemental Memorandum in Support of Motion for Summary Judgment [Doc. 31], to which the plaintiffs have filed an Opposition [Doc. 32], to which West Calcasieu Cameron Hospital has filed a Reply [Doc. 33], to which the plaintiffs have filed a *Sur* Reply [Doc. 34]. For the following reasons, West Calcasieu Cameron Hospital's Motion [Doc. 27] is **GRANTED**.

## FACTS & PROCEDURAL HISTORY

On May 12, 2012, Laura O'Hara ("O'Hara") sought treatment at West Calcasieu Cameron Hospital ("WCCH") because she was experiencing pain and swelling after a dental procedure.[1] In addition to the pain, O'Hara informed staff at WCCH that she was having difficulty swallowing.[2] She was given two medications intravenously: antibiotics and medication for her pain.[3]

---
[1] Compl. [Doc. 1] & Medical Rs. of Laura O'Hara [Doc. 32-5].
[2] WCCH Medical Rs. of Laura O'Hara [Doc. 32-5], at 5.
[3] *Id.* at 6.

1

O'Hara's blood was drawn, and WCCH performed a CT scan of the soft tissues of her neck.[4] Her bloodwork revealed an elevated white blood count with a left shift.[5] The CT scan revealed inflammation, several fluid collections along the left mandibular body, and "mild mass effect on [the] left oropharynx due to inflammatory process."[6] O'Hara was diagnosed with facial cellulitis, given a prescription for Lortab for her pain, and discharged with instructions to go to W.O. Moss Regional Medical Center ("Moss") for additional treatment the next day.[7]

When O'Hara went to Moss the next day, she was unable to fully open her mouth.[8] She was immediately transferred to Earl K. Long Hospital for emergency surgery to drain abscesses in her jaw.[9]

O'Hara filed suit against WCCH and Clarence Bolinger, MD ("Bolinger"), on May 10, 2013, alleging a claim of malpractice against Bolinger and a violation of the Emergency Medical Treatment and Labor Act ("EMTALA" or "the Act") against WCCH.[10] On August 6, 2013, the only other defendant in this matter, Bolinger, was dismissed.[11] WCCH filed the instant motion on November 12, 2014.[12]

## LAW & ANALYSIS

A grant of summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute is said to be "genuine" only where "a reasonable jury could return a verdict for the non-moving party." *Dizer v. Dolgencorp, Inc.*, No. 3:10-cv-699,

---

[4] *Id.* at 6.
[5] *Id.* at 18.
[6] *Id.* at 23-25.
[7] *Id.* at 4, 8.
[8] Moss Medical Rs. of Laura O'Hara [Doc. 32-6], at 1-3.
[9] Earl K. Long Medical Center Medical Rs. of Laura O'Hara [Doc. 32-7], at 1-3.
[10] Compl. [Doc. 1].
[11] J. [Doc. 9].
[12] *See* Mot. for Summ. J. [Doc. 27].

2

2012 U.S. Dist. LEXIS 24025, at *16 (W.D. La. Jan. 12, 2012) (citing *Fordoche, Inc. v. Texaco, Inc.*, 463 F.3d 388, 392 (5th Cir. 2006)). In ruling upon a motion for summary judgment, the district court shall draw all inferences in a light most favorable to the nonmoving party. *Id.* at *3 n.1 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (additional citation omitted)). "Rule 56[(a)] mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to a party's case, and on which that party will bear the burden of proof at trial." *Webber v. Christus Schumpert Health Sys.*, No 10-1177, 2011 U.S. Dist. LEXIS 99235, at *14 (W.D. La. Sept. 2, 2011) (citing *Patrick v. Ridge*, 394 F.3d 311, 315 (5th Cir. 2004)). "The non-movant cannot preclude summary judgment by raising 'some metaphysical doubt as to the material facts, conclusory allegations, unsubstantiated assertions, or by only a scintilla of the evidence.'" *Cormier v. W&T Offshore, Inc.*, No. 10-1089, 2013 U.S. Dist. LEXIS 53416, at *18-19 (W.D. La. Apr. 12, 2013) (citing *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)).

The EMTALA was enacted "to prevent 'patient dumping,' which is the practice of refusing to treat patients who are unable to pay." *Battle v. Memorial Hosp.*, 228 F.3d 544, 557 (5th Cir. 2000) (quoting *Marshall v. East Carroll Parish Hosp.*, 134 F.3d 319, 322 (5th Cir. 1998)). "The act requires that participating hospitals[11] give the following care to an individual who is presented for emergency medical care: (1) an appropriate medical screening, (2) stabilization of a known emergency medical condition, and (3) restrictions on transfer of an unstabilized individual to another medical facility." *Id.* (citing 42 U.S.C. § 1395dd(a)-(c)).

---

[11] "Because hospitals can act and know things only vicariously through individuals, any EMTALA violation by...a physician [who treats patients in fulfillment of their contractual duties with the hospital] is also a violation by the hospital." *Battle*, 228 F.3d at 557 (quoting *Burditt v. U.S. Dep't of Health & Human Servs.*, 934 F.2d 1362, 1374 (5th Cir. 1991) (alteration in original)).

*Screening*

> With regards to medical screening, the Act provides:
> In the case of a hospital that has a hospital emergency department, if any individual . . . comes to the emergency department and a request is made on the individual's behalf for examination or treatment for a medical condition, the hospital must provide for an appropriate medical screening examination within the capability of the hospital's emergency department, including ancillary services routinely available to the emergency department, to determine whether or not an emergency medical condition (within the meaning of subsection (e)(1) of this section) exists.

42 U.S.C. § 1395dd(a). An "emergency medical condition" is defined, in pertinent part, as:

> (A) a medical condition manifesting itself by acute symptoms of sufficient severity (including severe pain) such that the absence of immediate medical attention could reasonably be expected to result in--
> (i) placing the health of the individual (or, with respect to a pregnant woman, the health of the woman or her unborn child) in serious jeopardy,
> (ii) serious impairment to bodily functions, or
> (iii) serious dysfunction of any bodily organ or part . . . .

42 U.S.C. § 1395dd(e)(1). If it is determined that the patient has an emergency medical condition, the hospital must either stabilize the patient or transfer the patient to another medical facility. 42 U.S.C. § 1395dd(b)(1).

The EMTLA, however, "was not intended to be used as a federal malpractice statute." *Marshall*, 134 F.3d at 322. Thus, "an EMTALA 'appropriate medical screening examination' is not judged by its proficiency in accurately diagnosing the patient's illness, but rather by whether it was performed equitably in comparison to other patients with similar symptoms." *Id.* Accordingly, "[a] hospital's liability under EMTALA is not based on whether the physician misdiagnosed the medical condition or failed to adhere to the appropriate standard of care. Instead, the plaintiff must show that the hospital treated him differently from other patients with similar symptoms." *Battle*, 228 F.3d at 557 (citing *Marshall*, 134 F.3d at 322, 324) (internal citation omitted). If the hospital provided an appropriate medical screening examination, it is

4

not liable under the EMTALA even if the treating physician would be liable for malpractice under state law. *Marshall*, 134 F.3d at 322-23.

In order to avoid summary judgment, O'Hara must present evidence showing an issue of material fact as to whether WCCH provided her with an EMTALA appropriate medical screening examination. *Id.* at 323. Although the phrase an "appropriate medical screening examination" is not defined by the EMTALA, the courts have interpreted it to mean "a screening examination that the hospital would have offered to any other patient in a similar condition with similar symptoms." *Id.* at 323.

In her memorandum in opposition, O'Hara states "Plaintiff . . . contests nearly all of defendant's 'Statement of Uncontested Material Facts' specifically: . . . Laura O'Hara was appropriately screened on May 12, 2012."[13] Because all of the other contested areas identified by O'Hara rephrased WCCH's statement of material facts in a way that supported a cause of action by O'Hara, it is possible that this was a typo and meant to read that "Laura O'Hara was inappropriately screened . . . ."[14] However, this is unlikely. O'Hara's Statement of Uncontested Material Facts also reads that she "received an appropriate screening upon her presentation to West Calcasieu Cameron Hospital on May 12, 2012."[15] Additionally, in her answers to interrogatories by WCCH, O'Hara writes "Plaintiff is not claiming that she was inappropriately screened."[16] Because O'Hara does not dispute that she received an appropriate medical screening, there is no genuine dispute as to a material fact over this issue.

---

[13] Pl.'s Mem. in Opp. to Def.'s Mot. for Summ. J. [Doc. 32], at 1-2.
[14] *Id.*
[15] Pl.'s Statement of Uncontested Material Facts [Doc. 32-1] ¶ 5.
[16] Answers and Resps. To First Set of Trial Interrogs. and Request for Produc. of Docs. [Doc. 33-1], at 3-4.

*Stabilization*

If the hospital, after an appropriate medical screening, has actual knowledge of an emergency medical condition, it must then provide either "within the staff and facilities available at the hospital, for such further medical examination and such treatment as may be required to stabilize the medical condition, or for transfer of the individual to another medical facility . . . ." 42 U.S.C. § 1395dd(b)(1)(A) & (B). To "stabilize" means "to provide such medical treatment of the condition as may be necessary to assure, within reasonable medical probability, that no material deterioration of the condition is likely to result from or occur during the transfer of the individual from a facility . . . ." *Id.* § 1395dd(e)(3)(A). The Fifth Circuit has defined "to stabilize" as "[t]reatment that medical experts agree would prevent the threatening and severe consequence of the patient's emergency medical condition while in transit." *Burditt v. United States Dep't of Health & Human Servs.*, 934 F.3d 1362, 1369 (5th Cir. 1991).

A hospital's duty to stabilize or transport under the EMTALA does not apply unless an emergency medical condition has been diagnosed. *See Marshall*, 134 F.3d at 324-25; *Holcomb v. Monahan*, 30 F.3d 116, 117 (11th Cir. 1994) (citation omitted); *Vickers v. Nash General Hosp., Inc.*, 78 F.3d 139, 145 (4th Cir. 1996) ("The Act does not hold hospitals accountable for failing to stabilize conditions of which they were not aware, or even of conditions of which they should have been aware.") In the instant case, there is no evidence that Bolinger diagnosed O'Hara with an emergency medical condition within the meaning of the Act.

Although O'Hara submitted an affidavit from another physician who states that it is his opinion that she had an emergency medical condition while at WCCH, O'Hara has submitted no evidence that she was *diagnosed* with an emergency medical condition while at WCCH.[17]

---

[17] *See* Affs. of Ronald Paynter, M.D., F.A.C.E.P., C.P.E. [Docs. 32-2 & 32-3].

O'Hara stated that she was having difficulty swallowing, but there was no issue with her airway found after an exam.[18] O'Hara's medical records note that she was diagnosed with facial cellulitis and discharged home in stable condition.[19] Whether Bolinger could or should have diagnosed O'Hara with an emergency medical condition is irrelevant under the Act; there is no duty to stabilize unless the hospital has actual knowledge of the individual's unstabilized emergency medical condition. *See Marshall,* 134 F.3d at 321, 25 (no duty to stabilize where patient was having a stroke that had been misdiagnosed as a respiratory infection).

Accordingly,

**IT IS ORDERED** that WCCH's Motion for Summary Judgment [Doc. 27] be and hereby is **GRANTED.**

**IT IS FURTHER ORDERED** that, because this ruling disposes of all pending claims, the above-captioned matter be and hereby is **DISMISSED, WITH PREJUDICE,** each party to bear its own costs.

Lake Charles, Louisiana, this 15 day of Jan , 2015.

PATRICIA MINALDI
UNITED STATES DISTRICT JUDGE

---

[18] WCCH Medical Rs. of Laura O'Hara [Doc. 32-5], at 5.
[19] *Id.* at 6.